# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **Glenda W.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   Civil Action No. 7:18-CV-450 |
| | ) |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Glenda W. ("Glenda") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Glenda alleges that the Administrative Law Judge ("ALJ") failed to consider her inability to maintain a static work posture and need to lie down during the day; failed to properly weigh the opinion of her treating physician; and failed to properly consider her subjective allegations. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Glenda's Motion for Summary Judgment (Dkt. 14) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 16).

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Glenda failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Glenda filed for DIB and SSI on February 22, 2017, claiming disability beginning September 30, 2016, due to rheumatoid arthritis. R. 202, 206, 229. Glenda's date last insured was March 31, 2022; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 15; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

The state agency denied Glenda's applications at the initial and reconsideration levels of administrative review. R. 76–111. On April 5, 2018, ALJ Geraldine Page held a hearing to consider Glenda's claims. R. 38–75. Counsel represented Glenda at the hearing, which included testimony from vocational expert John Newman. Id. On May 3, 2018, the ALJ entered her

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

decision analyzing Glenda's claims under the familiar five-step process[3] and denying her claim for DIB and SSI benefits. R. 15–32.

The ALJ found that Glenda suffered from the severe impairments of rheumatoid arthritis, osteoarthritis of the hips and knees, and obesity. R. 18. The ALJ determined that Glenda's impairments did not meet or medically equal a listed impairment. R. 19. The ALJ concluded that Glenda retained the residual functional capacity ("RFC") to perform light work, with the additional restrictions of occasionally pushing and pulling and never crawling. R. 20. The ALJ determined that Glenda should avoid all exposures to hazardous machinery, work at unprotected heights, climbing ladders, ropes, or scaffolds, work on vibrating surfaces, and even moderate exposure to extreme temperatures. Id. The ALJ found that Glenda can occasionally climb ramps and stairs, balance, kneel, stoop and crouch.  She can also occasionally perform handling, feeling, fingering and frequently reach overhead. Id.

The ALJ determined that Glenda is unable to perform her past work as a CNA and personal care aide, but that she can perform other work that exists in the national economy, including usher, lobby attendant, ticket taker, and counter or retail clerk. R. 30–32.  Thus, the ALJ concluded that Glenda was not disabled. R. 32. Glenda appealed the ALJ's decision and the Appeals Council denied her request for review on July 26, 2018. R. 1–4. This appeal followed.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

Glenda alleges that the ALJ erred by (1) failing to address her inability to maintain a static work posture and her need to lie down during the day; (2) improperly according less weight to the opinion of her treating physician; and (3) discounting her subjective allegations of impairment.

### A. Function-by-Function Analysis

Glenda asserts that the ALJ failed to provide a proper function-by-function analysis, and specifically failed to address her inability to maintain a static work posture and her need to lie down during the day. Pl. Br. Summ. J. p. 9. Under Social Security Ruling ("SSR") 96-8p, the ALJ must assess the claimant's work-related abilities on a function-by-function basis, including the functions listed in the regulations. SSR 96-8p, 1996 WL 362207. Only after such a function-by-function analysis may an ALJ express an RFC "in terms of the exertional levels of work." Id. The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court

held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Glenda likens this case to the ALJ's decision in Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016), where the ALJ failed to sufficiently address the claimant's complaints of narcolepsy when developing the RFC. In Monroe, the claimant testified that he would lose consciousness about two or three times per day and would need to take several breaks during the day because of fatigue. The ALJ found that Monroe's sleep apnea and narcolepsy were severe impairments, and he concluded that Monroe's impairments could reasonably be expected to cause his claimed symptoms. However, the ALJ failed to make specific findings about whether Monroe's apnea or narcolepsy would cause him to experience episodes of loss of consciousness or fatigue necessitating breaks in work and if so, how often these events would occur. Rather, the ALJ simply concluded that Monroe was capable of light work and that Monroe's claimed symptoms were "not credible to the extent they are inconsistent with" the RFC the ALJ identified. Monroe, 826 F.3d at 188.

Here, Glenda's difficulty maintaining a static work posture and her need to lie down were not severe impairments, but rather complaints she made during the administrative hearing that the ALJ found unsupported by the record. Glenda testified at the administrative hearing that she can sit for 45 minutes at a time before needing to change positions (R. 53), that she can only stand for about five minutes at a time (R. 57), and that she needs to lie down at least four times a day for about ten minutes a time. R. 59.

In developing Glenda's RFC, the ALJ provided a detailed summary and analysis of Glenda's medical records, testimony and opinion evidence. The ALJ discussed Glenda's symptoms, her resulting limitations, the medical evidence, medical opinions, Glenda's testimony, her credibility and conflicting medical evidence. R. 20–32. The ALJ noted Glenda's testimony that she can barely stand, is unable to walk long distances, experiences shortness of breath, can sit for only 45 minutes at a time, stand in one place for up to five minutes and must lie down during the day. R. 21. The ALJ found that Glenda's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medial evidence and other evidence in the record for reasons explained in this decision." R. 26.

Specifically, the ALJ recognized that Glenda suffered from rheumatoid arthritis and complained of arthritic pain in her hips, knees, ankles, feet, hands and wrists. R. 26. Glenda was diagnosed with long-standing rheumatoid arthritis and previously had an almost complete fusion of her right ankle and had significantly limited range of motion in her left ankle. R. 311. The ALJ noted that despite these limitations, Glenda was able to work a heavy exertional level job as a CNA for many years. R. 27. The ALJ recognized that Glenda's symptoms eventually progressed such that she could no longer perform heavy exertional work; however, she responded positively to treatment with medication. The ALJ found that when treated, Glenda could perform a limited range of light exertion work.

The ALJ reviewed Glenda's medical records and noted consistent complaints of poor range of motion in her right wrist, limited range of motion in her left wrist, and sharp pain with extension. Glenda reported to her doctor in June 2017 that it became difficult for her to do the

6

lifting and pushing required by her job due to significant pain in her hands and feet. R. 27. However, the ALJ further noted that Glenda did not immediately comply with the recommended medication treatment. R. 27. Glenda's examinations in June 2017 showed no significant swelling of her PIP or MCP joints; and by September 2017, Glenda reported that her bilateral wrist arthritis was well controlled with Celebrex and Tylenol. R. 27, 369. Glenda's treatment notes in September 2017 reflected no significant arthritis deformities, tenderness, swelling, erythema or warmth in her hands. R. 364. The ALJ noted that Glenda's shoulders and elbows had good range of motion and were non-tender. R. 27, 363. On March 7, 2018, Glenda had 5/5 right grip strength and no swelling or tenderness in her upper extremity joints. R. 419. Glenda continued to have very poor range of motion in her right wrist, somewhat limited range of motion in her left wrist and sharp pains at the limits of flexions/extension of her wrists. Id.

Regarding Glenda's lower extremities, the ALJ noted that X-rays showed degenerative changes in Glenda's hips and knees. Glenda also had a previous right ankle fusion and very limited range of motion in her left ankle. Glenda had motor and range of motion loss, tenderness and crepitus in her hips, knees and ankles on exam. R. 28, 311, 346, 378, 390. The ALJ also noted, however, that Glenda's abnormalities improved significantly after she began receiving appropriate treatment for her rheumatoid arthritis. R. 28. Physical examinations in September and November 2017 reflected no edema, tenderness or deformity in Glenda's lower extremities and she was able to stand from a seated position without weakness. Glenda's knees had good range of motion and were non-tender, her ankles were non-tender, and she had no tender or swollen joints in her feet. R. 363–64, 371. Glenda reported bilateral knee pain throughout the day that is worse at the end of the day when she exerts herself or walks far distances. R. 369. In January 2018, Glenda denied any joint swelling, although she did note a popping sound with

extension of her knee. R. 472. She continued to complain of pain related to her varicose veins with long standing, sitting and worse at night. Id.

On April 10, 2017, state agency physician Joseph Familant, M.D., reviewed Glenda's records and determined that she could perform light work, with no pushing or pulling restrictions. R. 79. Dr. Familant determined that Glenda could frequently climb ramps and stairs; occasionally climb ladders, ropes and scaffolds; and frequently stoop, kneel, crouch and crawl. R. 79–80. Dr. Familant noted that Glenda had a history of hip arthritis but no abnormalities with her strength or gait on examination. Id. On May 3, 2017, Joseph Duckwall, M.D., reviewed Glenda's records on reconsideration and agreed with Dr. Familant's conclusions. R. 97–98. The ALJ reviewed the state agency medical physicians' assessments and gave them "some" weight. R. 28. The ALJ noted that Drs. Familant and Duckwall are non-examining sources, but they are medical experts with a high level of understanding of the SSA's disability programs and performed a holistic review of Glenda's record. R. 28. The ALJ gave Drs. Familant and Duckwall's opinions some weight but noted that evidence received at the administrative hearing supported additional exertional, postural, manipulative and environmental limitations. Id. Specifically, the ALJ found that physical examinations in July 2017 (R. 390), August 2017 (R. 378), November 2017 (R. 364) and March 2018 (R. 419) reflected additional joint abnormalities and persistent complaints of pain, stiffness, and range of motion loss. The ALJ stated, "the above residual functional capacity includes additional non-exertional limitations to accommodate these complaints and objective abnormalities to the extent that is reasonable based on the totality of the evidence." R. 29.

The ALJ also considered the opinion of Glenda's treating physician, Michael Berry, M.D., dated March 20, 2018. R. 29, 466–469. Dr. Berry noted that Glenda was capable of lifting

8

or carrying less than 10 pounds and standing or walking less than 2 hours in an 8-hour workday. R. 466. Dr. Berry wrote next to these sections of the form, "all specific weight limits are based on patient's statements." Id. Dr. Berry noted that Glenda needs to rest for a total of 4 hours during the workday due to pain, and again noted that this was based on Glenda's statements. R. 467. Dr. Berry found that Glenda has limited ability to push and pull with her lower extremities due to decreased range of motion and pain with ankle and knee movements, and noted that she has been diagnosed with rheumatoid arthritis of the hands, wrists and ankles, as well as osteoarthritis of bilateral knees. R. 467–68. Dr. Berry found that Glenda could frequently balance; occasionally, climb ramps, stairs, ladders, ropes and scaffolds; occasionally kneel, crouch and stoop; and never crawl. R. 468. Dr. Berry noted that "[r]heumatoid arthritis has caused stiffening in her joints making it difficult for range of movements. Her osteoarthritis causes her to walk with a limp." Id. Dr. Berry noted that Glenda specified that she has limited ability to handle and finger, but unlimited ability to reach in all directions and feel. Id. Dr. Berry also noted that Glenda stated she could have limited contact with cold temperatures, noise, dust, vibration, and hazards. R. 469. Dr. Berry added the following handwritten note to his medical statement, "[t]his evaluation was done without equipment or weights and I am not a[n] occupational physician and have no disability training." Id.

The ALJ considered Dr. Berry's opinion and gave it limited weight. R. 29. The ALJ agreed with and adopted Dr. Berry's suggested push/pull and postural limitations, finding that Glenda's rheumatoid arthritis and osteoarthritis reasonably cause some range of motion loss and pain. Id. The ALJ found the remainder of Dr. Berry's suggested limitations unsupported by the record. The ALJ noted that Dr. Berry specifically stated that he was relying upon Glenda's subjective statements and he did not evaluate her limitations based upon independent

9

observations. Id. The ALJ also reviewed two statements from Dr. Berry in Glenda's medical records noting that "the patient states because of the pain in her legs and in her knees she is unable to work," (R. 412), and "suspect she is limited in her abilities to do manual work and her dexterity" (R. 479). R. 29. The ALJ noted that the term "manual work" is not defined and Dr. Berry does not specify Glenda's degree of limitation with dexterity. Notably, in his medical record, Dr. Berry again states, "[t]he limitations on lifting, standing, carrying, etc are based upon the patient's statements. I reiterated on the form that we do not have the equipment to perform a specific disability evaluation and I am not trained in disability evaluations or in occupational medicine." R. 479.

On July 11, 2017, Amy Foutz, PT, evaluated Glenda to develop a care plan. Ms. Foutz's record includes a functional assessment noting that Glenda can walk 200 feet before requiring a rest break; stand 5 minutes before requiring a rest break; and requires use of a handrail to climb stairs. R. 386. Ms. Foutz found that Glenda presents with generalized weakness and joint pain secondary to juvenile rheumatoid arthritis with poor core stabilization, weakness at glutes and quads, and poor posture contributing to decreased functional mobility and stability in standing. Ms. Foutz noted that Glenda would benefit from physical therapy to address these issues. Id.

The ALJ reviewed Ms. Foutz's functional assessment and gave it little weight. R. 29. The ALJ noted that it is unclear in the record whether the limitations found by Ms. Foutz were her independent assessment of Glenda's abilities, or self-reported. Further, the ALJ found those limitations not fully consistent with other evidence, including Glenda's physical examinations in September and November 2017, reflecting normal range of motion, no edema, tenderness or deformity (R. 371), standing from a seated position with no weakness, good range of motion in shoulders and elbows, no effusion, erythema, or warmth at the wrists, no arthritic deformities,

10

tenderness or swelling in her hands, good range of motion in her knees with no tenderness, and no tenderness or swelling in her ankles or feet (R. 363–64). R. 30. The ALJ also noted that subsequent physical examinations reflected similar findings. R. 30, 419, 474, 482.

The ALJ concluded that the RFC is supported by Glenda's overall history of treatment, and that Glenda's alleged limiting effects of her impairments are not fully consistent with the objective medical evidence and other evidence in the record. R. 30.

Substantial evidence supports the ALJ's conclusion that Glenda's subjective complaints of inability to maintain a static work posture and need to lie down four hours a day did not require additional limitations beyond those included in the RFC. An ALJ's narrative discussion of the evidence in support of her findings in determining a claimant's RFC is sufficient to comply with the function-by-function analysis under SSR 96-8p. Hitchens v. Colvin, No. 7:13cv40, 2014 WL 6977765, at * 15 (E.D.N.C. Dec. 9, 2014). Here, the ALJ fully discussed Glenda's medical evidence, her allegations regarding her symptoms and limitations and the medical opinions in the record. The ALJ acknowledged Glenda's complaints of limitation and pain and gave her a carefully considered RFC, which includes more restrictions than those suggested by the state agency physicians, and many of the restrictions recommended by Dr. Berry. Thus, unlike in Monroe, the ALJ's narrative discussion sufficiently supports her determination of Glenda's RFC.

### B. Treating Physician's Opinion

Glenda also argues that the ALJ erred by refusing to accord controlling weight to Dr. Berry's opinion. Glenda notes that Dr. Berry is her treating physician with Carilion Internal Medicine for her rheumatoid arthritis, osteoarthritis and obesity. Pl. Br. Summ. J. p. 12. Glenda asserts that Dr. Berry's findings are consistent with other substantial evidence in the record and

11

should have been given great weight. Id.

A treating physician's opinion which is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," will receive controlling weight. 20 C.F.R. § 404.1527(c)(2); Brown v. Comm'r, 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. C.F.R. § 404.1527(c)(2); Brown, 873 F.3d at 256. Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, he must consider the following factors to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 404.1527(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r Soc. Sec. Admin., No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam)).

Here, the ALJ appropriately considered the relevant factors and the record in determining the weight to give Dr. Berry's opinion. As noted above, the ALJ considered Dr. Berry's opinion

and gave it limited weight. R. 29. The ALJ agreed with and adopted Dr. Berry's suggested push/pull and postural limitations, finding that Glenda's rheumatoid arthritis and osteoarthritis reasonably cause some range of motion loss and pain. Id. The ALJ found the remainder of Dr. Berry's suggested limitations unsupported by the record.

The ALJ reviewed Glenda's medical records in detail, as summarized above, and found consistent reports of pain and limited range of motion in her wrists, but also reports that Glenda's overall wrist arthritis was well controlled with Celebrex and Tylenol. The ALJ noted that Glenda's lower extremity symptoms improved significantly after she began appropriate treatment for her rheumatoid arthritis. The ALJ pointed to records reflecting that Glenda reported bilateral knee pain, but in November 2017, she was able to stand from a seated position without weakness, had good range of motion in her shoulders and elbows, good range of motion in her knees, and no tenderness in her knees or ankles. R. 25–28.

The ALJ also noted that Dr. Berry specifically stated in his opinion that he was relying upon Glenda's subjective statements and did not evaluate her limitations based upon his own independent observations. Id. Indeed, in his medical record from the same date he rendered his opinion, Dr. Berry stated, "[t]he limitations on lifting, standing, carrying, etc are based upon the patient's statements. I reiterated on the form that we do not have the equipment to perform a specific disability evaluation and I am not trained in disability evaluations or in occupational medicine." R. 479. The ALJ also considered the state agency physician opinions in the record and found more restrictions necessary than those suggested by the state agency physicians to accommodate Glenda's loss of range of motion and pain.

Thus, contrary to Glenda's contention that the ALJ did not consider the appropriate factors, the ALJ specifically discussed whether medical evidence supports Dr. Berry's opinion

and the opinion's consistency with the record as a whole. See Hendrix v. Astrue, No. 1:09-01283-HFF, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010) ("[A]n express discussion of each factor is not required as long as the ALJ demonstrates that he applied the [§ 404.1527(c)] factors and provides good reasons for his decision."). Further, it is appropriate for an ALJ to question a treating physician's opinion if it relies on a claimant's subjective allegations, especially where the ALJ finds the claimant's statements regarding her symptoms and their severity to be less than credible. Weaver v. Colvin, No. 3:15-cv-00026, 2016 WL 4768841, at *11 (W.D. Va. Sept. 13, 2016) (citing Morris v. Barnhart, 78 Fed. Appx. 820, 824 (3d Cir. 2003) (an ALJ may properly discredit a physician's findings that were premised largely on a claimant's own accounts of his symptoms and limitations where the claimant's complaints are properly discounted)).

Substantial evidence supports the ALJ's decision to accord Dr. Berry's opinion less weight. The ALJ explained the relevant medical opinions and ultimately ruled that the opinion of Dr. Berry was inconsistent with the objective medical evidence. This is the ALJ's job: to review the medical evidence of record, weigh the medical opinions, and determine a RFC that reflects Glenda's actual functional capacity. Having reviewed the record, I find that substantial evidence supports the ALJ's decision to give Dr. Berry's opinion less weight.

### C. Subjective Allegations of Impairment

Glenda also asserts that the ALJ's assessment of her allegations is not supported by substantial evidence. Pl. Br. Summ. J. p. 13. This section of Glenda's brief appears to restate her prior assertion that the ALJ erred by discounting her testimony that she cannot sit or stand very long and must lie down during the day. Id. Indeed, Glenda notes that the "ALJ's findings are not specific enough to provide guidance to subsequent readers of her decision as to why she rejected plaintiff's allegations regarding an inability to maintain a static work posture, her need to stop

14

and take frequent rest breaks during the day, and her need to lie down during the day." Id. at p. 15. This argument is analyzed in detail above.

Glenda also alleges that the ALJ failed to acknowledge that she performs daily activities intermittently with frequent rest breaks, citing to Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017) for support. Id. at 15–16. In Brown, the court held that the ALJ erred by discounting the claimant's credibility based upon daily activities without acknowledging the limited extent of those activities as described by the claimant or explaining how those activities showed that he could sustain a full-time job. Id. The Court also found that the ALJ erroneously relied upon his own observations and medical judgments in finding that Brown's pain was not as limiting as he claimed because he could sit through the ALJ's hearing, take a psychological test, and manage his own money. Id. at 271.

Here, the ALJ properly considered Glenda's testimony regarding her daily activities. The ALJ expressly acknowledged multiple times the limited extent of the daily activities Glenda described in her testimony. The ALJ noted Glenda's testimony that she hurts more when she attempts to perform activities of daily living (R. 20); when she worked as a CNA she would come home crying at the end of a workday from pain (R. 20–21); it is painful for her to use her hands to perform activities and she has to take breaks due to pain (R. 21); she is able to write for about 15 or 20 minutes before her wrist gets stiff and she has to stop (id.); she does not have any trouble holding onto objects or using buttons or zippers, but these activities are painful (id.); the claimant can bathe and dress herself with some pain and difficulty, taking breaks (id.); she can make meals and clean up afterward, taking breaks; and she performs household chores in increments of about five or six minutes before needing to rest for 10 to 15 minutes (id.). The ALJ

discounted Glenda's testimony as to her limitations based upon her medical records and the opinion testimony, as set forth in detail above.

Unlike the ALJ in Brown, the ALJ here did not rely on her own observations or judgments, but instead thoroughly discussed Glenda's self-reports and testimony, the objective medical evidence, and the medical opinions. She recognized Glenda's limited daily activities but cited specific evidence as to why those activities may not be as limited as alleged based upon Glenda's objective examination findings. Considering Glenda's treatment notes, together with the medical opinions, substantial evidence supports the ALJ's conclusion that objective medical evidence undermined Glenda's statements regarding the extent of her limitations. See Ladda v. Berryhill, No. 17-1366, 2018 WL 5096065 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility determination because the ALJ explained his reasoning and weighed the claimant's subjective statements against other evidence.)

## **CONCLUSION**

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **DENYING** Glenda's motion for summary judgment, **GRANTING** the Commissioner's motion for summary judgment, and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive on the parties. Failure to file

specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered:  January 7, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge